# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HARRY E. EISS,

    Plaintiff,

v.

Case No. 17-13141

HON. DENISE PAGE HOOD

OCWEN LOAN SERVICING, LLC
and U.S. BANK NATIONAL
ASSOCIATION d/b/a US Bank,

    Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT[#14]

**I.    INTRODUCTION**

On or about August 17, 2017, Plaintiff Harry E. Eiss ("Plaintiff") filed the instant action in Livingston County Circuit Court, alleging that Defendants breached a contract and also seeking declaratory judgment. Defendants removed the case to this Court on September 25, 2017. On August 30, 2018, the Court denied Plaintiff's Motion for Partial Summary Judgment. [*See* Dkt. No. 18] Defendants have filed a Motion for Summary Judgment [Dkt. No. 14], which has been fully briefed. For the reasons that follow, the Court denies Defendants' Motion for Summary Judgment.

## II. BACKGROUND

On or around October 22, 2004, Plaintiff and his wife, Betty J. Eiss, borrowed $620,000 (the "Loan") from GMAC Mortgage Corporation ("GMAC") to purchase a home located at 4967 E. Aljoanne, Brighton, Michigan 48116 ("the Property"). In connection with the Loan, Plaintiff and Betty J. Eiss executed: (a) a promissory note that specified the principal balance and re-payment terms ("the Note"); and (b) a mortgage ("the Mortgage") on the Property with GMAC. On or around October 20, 2008, following their divorce, Betty J. Eiss executed a quit claim deed conveying any interest she had in the Property to Plaintiff.

On or around March 31, 2010, GMAC and Plaintiff entered into a Modification Agreement (the "Agreement") that expressly modified both the Note and the Mortgage. [Dkt. No. 9, Ex. D] The Agreement includes the following relevant provisions at Paragraph 3:

A. The new Maturity Date will be 11/1/2034.

B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be 513,273.68 ("the New Principal Balance").

C. The new monthly principal and interest payment will be calculated based on an extended amortization ("repayment") period of 480 months. The actual remaining Term of your loan, however, will be 298. As a result, your new monthly payment will not be sufficient

> to fully repay the entire amount of your loan over the actual remaining term. Therefore, at the end of the Term of your loan, your Maturity Date, you will be required to pay your loan in full.
> . . .
>
> D. $132,678.47 of the New Principal Balance shall be deferred (the Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $513,273.68. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 1/1/2010 and the first new monthly payment on the Interest Bearing Principal will be due on 02/01/2010. My payment schedule for the modified Loan is . . .

[Dkt. No. 9, Ex. D at ¶¶ 3.A. – D.] GMAC later assigned its interest in the Agreement to Defendant Ocwen Loan Servicing, LLC ("Ocwen") as servicer, and Defendant US Bank National Association, as Trustee for Structured Asset Mortgage Investments II Inc., Bear Stearns, ARM Trust, Mortgage Pass-Through Certificates, Series 2004-12 ("US Bank") (hereinafter, referred to collectively as "Defendants").

In early 2017, Plaintiff began the process of attempting to refinance the Property with another lender, and he requested a payoff quote from Ocwen in order to proceed further in the refinancing process. On May 12, 2017, Ocwen responded to Plaintiff's request for a payoff amount, stating that on March 9, 2010, the Loan was modified with a new principal balance of $645,952.15 pursuant to the Agreement. [Dkt. No. 9, Ex. F] After receiving the letter from Ocwen, with what Plaintiff

believed to be an incorrect payoff amount from Ocwen, Plaintiff filed the present lawsuit containing allegations of breach of contract and declaratory relief. Plaintiff's Complaint alleges that "[t]he principal balance of the Loan, as amended under the Modification Agreement, was as of 2/01/10, $513,273.68." Defendants contend that the principal balance of the Loan as of February 1, 2010 was $645,952.15.

## III. APPLICABLE LAW

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV. ANALYSIS

As set forth in the August 30, 2018 Order deciding Plaintiff's Motion for Partial Summary Judgment:

> Contracts should be construed to give effect to each term or phrase whenever practicable. *Klapp v. United Ins. Group Agency, Inc.,* 468 Mich. 459, 467 (2003). "Clear, unambiguous and definite contract language must be enforced as written and courts may not write a different contract for the parties or consider extrinsic evidence to determine the parties' intent." *Wausau Underwriters Ins. Co. v. Ajax Paving Indus., Inc.,* 256 Mich.App. 646, 650 (2003). If the contract is ambiguous, a court may allow extrinsic evidence to establish the actual intent of the parties. *Shay v. Aldrich*, 487 Mich. 648, 667 (2010). **If two provisions irreconcilably conflict, a question of fact exists that precludes summary judgment**. *Klapp*, 468 Mich. at 480.

[Dkt. No. 18, PgID 458 (emphasis added)] The Court makes, as a matter of law, an initial determination regarding the ambiguity of a contract. *See, e.g., Rainbow Nails Enterprises, Inc. v. Maybelline, Inc.*, 93 F.Supp.2d 808, 820 (E.D. Mich. 2000) (citing

5

*Port Huron Educ. Ass'n MEA/NEA v. Port Huron Area Sch. Distr.*, 452 Mich. 309, 323 (1996)). Contract provisions are considered ambiguous when the "terms are reasonably and fairly susceptible to multiple understandings and meanings." *Equitable Life Assurance Soc'y v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1988) (citing *Michigan Mutual Ins. Co. v. Dowell*, 204 Mich.App. 81 (1994)).

The Court denies Defendants' Motion for Summary Judgment because a genuine dispute of material fact exists regarding the total principal balance of the Loan. Defendants' argument that there is no basis by which any reasonable fact-finder could find that Plaintiff still owes anything less than $645,952.15 under the Agreement is not well-founded. Paragraph 3.B. of the Agreement provides: "The new Principal balance of my Note will be 513,273.68 (the "New Principal Balance")." Defendants argue that the amount in Paragraph 3.B. is a typographical error and direct the Court to language in Paragraph 3.D. they believe demonstrates that the New Principal Balance is a different amount. Defendants contend that, because Paragraph 3.B. is inconsistent with the language in Paragraph 3.D., the Court can consider in ruling upon Defendants' Motion for Summary Judgment extrinsic evidence to determine the parties' intent.

Defendants are correct in arguing that the language in Paragraph 3.D. does not comport with the language in Paragraph 3.B. Paragraph 3.D. provides, in relevant

6

part, that:

> $132,678.47 of the New Principal Balance shall be deferred (the Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. **The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $513,273.68**.

[Dkt. No. 14, Ex. F at PgID 282 (emphasis added)] The highlighted portion of Paragraph 3.D. is inconsistent with Paragraph 3.B. and the terms of Paragraph 3.B. and 3.D. "are reasonably and fairly susceptible to multiple understandings and meanings." *Equitable Life*, 143 F.3d at 1016.

It is undisputed that the Deferred Principal Balance is $132,678.47. If the New Principal Balance is in fact $513,273.68, that would mean the Interest Bearing Principal Balance, as defined in Paragraph 3.D., would be $380,595.21, not $513,273.68. Alternatively, if the Interest Bearing Principal Balance, as defined in Paragraph 3.D. is in fact $513,273.68, the New Principal Balance would be $645,952.15. When looking at the language in the Agreement, it is not possible to determine what the intended amounts for each of those terms was. As the Court held in the August 30, 2018 Order, "the inconsistency and discrepancy within the provisions of Paragraph 3 create[s] a genuine dispute of material fact regarding the amount of the New Principal Balance on the Modification Effective Date." [Dkt. No. 18, PgID 460]

A court's initial role regarding contract construction is limited, as a matter of law, to determining whether the contract is ambiguous. Once a court determines the contract is ambiguous, the court can allow extrinsic evidence to be considered, but even if it does so, the fact-finder – not the court – has the authority to consider the extrinsic evidence. *Klapp*, 468 Mich. at 469 ("It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury [or factfinder]."). "In resolving such a question of fact, *i.e.*, the interpretation of a contract whose language is ambiguous, the jury is to consider relevant extrinsic evidence." *Id.*

In this case, because the provisions within Paragraph 3 of the Agreement, specifically Paragraphs 3.B. and 3.D. are ambiguous, the Court will allow relevant extrinsic evidence regarding the parties' intent *vis a vis* the total principal balance owed by Plaintiff. The ambiguity of the terms of Paragraph 3, however, precludes the Court from granting summary judgment to Defendants, as the fact-finder – not the Court – must decide the parties' intent.

Defendants' Motion for Summary Judgment is denied.

## V. CONCLUSION

Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment. [Dkt. No. 14]

IT IS ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: September 6, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 6, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager